IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| GARSUMO PEE DORLEY, | |
| Petitioner, | CIVIL ACTION NO.: 5:22-cv-62 |
| v. | |
| T. NORMAND, | |
| Respondent. | |

### REPORT AND RECOMMENDATION

Petitioner Garsumo Dorley ("Dorley"), who is currently housed at the Folkston Immigration and Customs Enforcement ("ICE") Processing Center in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss, and Dorley filed a Response. Docs. 5, 11. Respondent filed a Supplement to his Motion. Doc. 13. Dorley, through counsel, filed a Supplement in opposition to the Motion to Dismiss. Doc. 19. The Court conducted an evidentiary hearing on this matter on March 30, 2023. Doc. 12. I announced my proposed findings and recommendations at the conclusion of the hearing, and I memorialize them here in writing. For the reasons stated at the hearing and that follow, I **RECOMMEND** the Court **DENY** Respondent's Motion to Dismiss, **GRANT** Dorley's § 2241 Petition, and **DIRECT** Respondent or other ICE officials to conduct an individualized bond determination hearing for Dorley as soon as practicable. I decline to take judicial notice of certain facts and decline to make a recommendation concerning which party should bear the burden at this individualized bond hearing.

## BACKGROUND

Dorley is a citizen of Liberia. Doc. 1 at 13. Dorley was admitted to the United States as a lawful permanent resident in February 2010. Doc. 5 at 1. In 2018, Dorley was convicted in Georgia, after pleading guilty, of aggravated assault, burglary, and invasion of privacy and was sentenced to eight years' probation. Doc. 1 at 13; Doc. 5 at 1–2. Dorley was arrested in January 2020 based on a charge of rape, doc. 5 at 2, though counsel stated during the hearing that charge was dismissed, perhaps, but is no longer pending. Dorley was arrested on March 23, 2021, for violating the terms of his probation and was in the State of Georgia's custody from that day until July 11, 2021. Id. ICE's Enforcement Removal Operations ("ERO") took custody of Dorley on August 2, 2021, and the Department of Homeland Security ("DHS") issued a notice to appear, charging Dorley as removable on August 11, 2021. Id. The immigration court rejected the first notice for lack of jurisdiction, and the second notice to appear was issued on January 13, 2022. Id.

In his Petition, Dorley asserts he has been in ICE's custody since August 2, 2021, without bond, resulting in his detention being unconstitutionally prolonged.[1] Doc. 1 at 2. Dorley asks this Court to order Respondent to prove by "clear and convincing evidence" he should continued to be detained. Id. at 19.

The Government argues Dorley is subject to mandatory detention under 8 U.S.C. § 1226(c) and his detention does not violate due process; thus, his request for a bond hearing should be denied. Doc. 5 at 4, 8. If the Court finds a due process violation, the Government

---

[1] At the time he filed his Petition, Dorley was proceeding pro se and provided the incorrect basis for his detention, 8 U.S.C. § 1225(b). Doc. 1 at 18. However, Dorley's counsel agreed at the hearing 8 U.S.C. § 1226(c) provides the proper basis for Dorley's detention. Dorley also seems to recognize this in his Response to the Motion to Dismiss. Doc. 11.

2

asserts the appropriate relief is the provision of a bond hearing before the immigration court. Id. at 8.

## DISCUSSION

Dorley, through counsel, asserts his detention has become unconstitutionally prolonged under the factors set forth in Sopo v. U.S. Attorney General ("Sopo I"), 825 F.3d 1199 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018). During the hearing, counsel for the Government argued the weight of the Sopo factors does not show Dorley's detention has been unconstitutionally prolonged such that he is entitled to a bond hearing. Counsel for Dorley argued to the contrary, stating Dorley is entitled to an individualized bond hearing at which the Government should bear the burden of proof.

Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226, governs detention of certain aliens during removal proceedings. Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018). Relevant to this case, § 1226(a) sets out the default rule, which permits, but does not require, the Attorney General to detain an individual while removal proceedings are ongoing. Id. Section 1226(c), however, "carves out a statutory category of aliens who may *not* be released under § 1226(a)." Id. (emphasis in original). Specifically, § 1226(c) provides the Attorney General "shall take into custody any alien who—is deportable by reason of having committed any offense" involving moral turpitude, as defined in 8 U.S.C. § 1227(a)(2)(A)(ii). Thus, § 1226(a) provides for discretionary detention for aliens until removal proceedings are complete (as long as certain conditions are met), but § 1226(c) eliminates that discretion and imposes mandatory detention for certain aliens, in particular aliens who committed offenses involving

moral turpitude.[2] Section 1226(c) does not on its face set a time limit on the length of detention, but, instead, requires aliens be held until a final removal decision has been made.

> In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue "pending a decision on whether the alien is to be removed from the United States."

Jennings, 138 S. Ct. at 846 (quoting § 1226(a)).

In terms of this Court's ability to review an immigration judge's detention decision, Congress has significantly curtailed the ability of detainees to seek judicial review of detention determinations under § 1226(a) and § 1226(c). As to discretionary detention under § 1226(a):

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). In other words, "§ 1226(e) precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release'" in a habeas proceeding.[3] Jennings, 138 S. Ct. at 841 (2018) (quoting Demore v. Kim, 538 U.S. 510, 516 (2003)). Similarly, by statute, review of all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States under [Title 8, Chapter 12, Subchapter II of the United States Code]

---

[2] Section 1226(c)(2) provides for a narrow exception to mandatory detention for witness-protection purposes, but there is no indication the (c)(2) exception applies in Dorley's case.

[3] This is not to say there is no review of detention determinations, only that judicial review is limited. Importantly, in cases where an alien is detained under § 1226(a), he can seek review of that detention with the Department of Homeland Security ("DHS") and then by an immigration judge and can "secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." Nielsen v. Preap, 139 S. Ct. 954, 960 (2019) (citing 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1003.19(a), 1236.1(d), and then citing Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006)).

shall only be available in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).  The United States Supreme Court has indicated these limitations will prevent challenges to actual discretionary decisions to detain an alien or to seek removal of the alien or to any discretionary judgment, action, or decision but will not prevent challenges to the "statutory framework" that permits detention.  Jennings, 138 S. Ct. at 839–41.

The record in this case demonstrates the immigration judge determined Dorley was subject to mandatory detention under § 1226(c) due to his prior convictions.  Dorley contests whether he has the requisite convictions (and is arguing he does not so qualify before the immigration court).  He asserts his detention has endured longer than is constitutionally permissible.

To the extent Dorley asserts a facial due process challenge based on the length of his detention (i.e., a challenge to the statutory framework permitting his detention in this case), that challenge fails as a matter of law, as the Supreme Court has explicitly rejected any facial constitutional challenge based the duration or indefiniteness of detention under § 1226(a) and § 1226(c).  Jennings, 138 S. Ct. at 842–52.  Furthermore, to the extent Dorley seeks to challenge any discretionary decision by an immigration judge related to his detention, he cannot do so here or at this time, given the limits of §§ 1226(e) and 1252(b)(9).  Id.

However, Dorley challenges the length of detention as violative of his right to procedural due process.  It is well-established aliens present in the United States are entitled to Fifth Amendment due process protections in deportation proceedings.  Reno v. Flores, 507 U.S. 292, 306 (1993).  The Supreme Court has also recognized, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process."  Demore v. Kim, 538 U.S. 510, 523 (2003).  By statute, any alien who is inadmissible or deportable by reason of

5

having committed certain enumerated criminal offenses after the alien has been released from criminal incarceration must be taken into and held in custody. 8 U.S.C. § 1226(c). In Demore, the Supreme Court held § 1226(c) does not—on its face—violate the due process rights of criminal aliens who are detained for the limited period of their removal proceedings. 538 U.S. at 513. However, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, where continued detention becomes unreasonable or unjustified. Id. at 531–33 (Kennedy, J., concurring).

In the years since Demore, many courts construed § 1226(c) as authorizing detention only for a "reasonable" amount time, so as to avoid resolving the constitutional challenges presented by extended § 1226(c) detention. See Sopo I, 825 F.3d at 1213–14 (collecting cases and adopting similar construction of § 1226(c)), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018). However, in Jennings, the Supreme Court rejected this construction of § 1226(c), recognizing the statute requires mandatory detention of certain aliens until the conclusion of their removal proceedings and the provision cannot be construed to impose a "reasonableness" limitation. 138 S. Ct. at 841. But, again, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, particularly where the petitioner alleges the detention has become unreasonably prolonged.

To determine if a procedural due process violation has occurred, courts must determine whether a petitioner was deprived of a protected interest, and, if so, whether constitutionally adequate due process was afforded. See Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982); Bank of Jackson Cnty. v. Cherry, 980 F.2d 1362, 1366 (11th Cir. 1993). As for others protected by the Due Process Clause, for aliens involved in removal proceedings, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at

6

the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Dorley has plainly established a deprivation of his freedom from confinement. Therefore, to resolve Dorley's Petition, the Court must determine whether he was afforded constitutionally adequate due process.

As noted above, § 1226(c) has been held to be facially constitutional, see generally Demore, and courts have deemed detention under that provision constitutional so long as the detention is justified and not unreasonably prolonged. While Dorley does dispute he is validly subject to § 1226(c) detention based on his criminal history, he seems to recognize this currently is the basis for his detention. Thus, Dorley contends the detention—now lasting 20 months—has been unreasonably prolonged. Courts in the Eleventh Circuit confronted with procedural due process challenges to prolonged detention under § 1226(c) have looked to Sopo I for guidance on evaluating the challenges. See Lukaj v. McAleenan, Case No. 3:19-cv-241, 2019 WL 4979745, at *6 (M.D. Fla. Oct. 8, 2019), *vacated on other grounds*, 2020 WL 248724 (M.D. Fla. Jan. 16, 2020); Moore v. Nielsen, No. 418CV01722, 2019 WL 2152582, at *10 (N.D. Ala. May 3, 2019). Those courts consider the reasoning of Sopo I concerning statutory construction of § 1226(c) and recognize the constitutional avoidance doctrine was rejected by the Supreme Court in Jennings and the opinion in Sopo I was later vacated by the Eleventh Circuit. Those courts also recognize the analysis in Sopo I concerning prolonged § 1226(c) detention remains persuasive and is particularly instructive when assessing the constitutionality of prolonged § 1226(c) detention. Lukaj, 2019 WL 4979745, at *6 (recognizing while "vacated opinions are void and have no legal effect[,]" "they can still have persuasive value"); Moore, 2019 WL 2152582, at *10 ("In assessing the constitutional avoidance doctrine, the Eleventh Circuit affirmatively answered the due process question in [Sopo I]."). The undersigned agrees. In applying the constitutional

7

avoidance doctrine in Sopo I, the Eleventh Circuit construed § 1226(c) to include a limit that avoided unconstitutional application of the statute.  The same analysis is highly instructive as to determining if prolonged detention under § 1226(c) does, in fact, violate a petitioner's right to procedural due process.

In Sopo I, the Eleventh Circuit explained it is appropriate to use a case-by-case approach to determine whether an alien's detention under § 1226 is reasonable (as opposed to adopting any sort of bright-line rule concerning the length of the petitioner's detention).  825 F.3d at 1215.  In conducting the case-by-case evaluation, a court should consider, among other things: (1) the amount of time the alien has been in detention without a bond hearing; (2) the cause of the protracted removal proceedings (i.e., whether the petitioner or the government has improperly delayed the proceedings); (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; (5) whether the facility at which the alien is civilly detained is meaningfully different from a penal institution; and (6) the likelihood the removal proceedings will conclude in the near future.  Id. at 1217–18.  The Court addresses each factor, as applied to Dorley's case.

I.      **Dorley's Detention Without a Bond Hearing**

Regarding the first factor—the length of detention without a bond hearing—the Eleventh Circuit noted § 1226(c) detention without a bond hearing is likely reasonable for up to six months but "may often become unreasonable by the one year mark, depending on the facts of the case."  Id. at 1218.  Critically, the Eleventh Circuit explained in the context of prolonged § 1226(c) detention, procedural due process does not require automatic release of a criminal

alien once the detention is unreasonably prolonged but, instead, requires the government to afford the alien an individualized bond inquiry.[4]  Id.

At the time of filing his Petition on October 26, 2022, Dorley had been in ICE's custody for nearly 15 months' time, or since August 2, 2021, without a bond hearing, and that amount of time is presumptively unreasonable under Circuit precedent.  At the time Respondent filed his Motion to Dismiss on December 21, 2022, Dorley had been in custody for more than 16 months' time.  And as of the date of this Report, which I find to be the proper measure, Dorley will have been in ICE's custody for 20 months' time without a bond hearing.

Dorley has been in detention without a bond hearing since August 2, 2021, and there is nothing before the Court indicating he has received a bond hearing.  Thus, as of the issuance of this Report, Dorley has been in ICE's custody for 20 months' time without a hearing or bond determination.  This period exceeds the presumptively reasonable period of 12 months.  This factor strongly weighs in Dorley's favor.

**II.    Delay in Proceedings**

While Dorley's counsel agreed Dorley's immigration proceedings are at an advanced stage, she noted this does not mean his immigration proceedings will conclude soon and she could only speculate how much longer it will take to conclude these proceedings.  Counsel noted the immigration judge will be faced with resolving complicated issues, particularly regarding whether Dorley's prior convictions still meet the definition of crimes involving moral

---

[4]    Counsel for Respondent brought the decision in Castro-Almonte v. Searls, 22-CV-861, 2023 WL 1931853 (W.D.N.Y. Feb. 9, 2023), to this Court's attention during the evidentiary hearing.  Counsel specifically pointed to that court's findings relating to the length of detention, which that court divided into three categories, though noted these periods of time, without more, generally do not warrant a finding of unreasonably prolonged detention: (1) 6 to 12 months' time; (2) 15 to 22 months' time; and (3) periods exceeding 24 months' time.  Castro-Almonte, 2023 WL 1931853, at *6–7.  As I explained at the hearing, I reviewed and considered the decision in Castro-Almonte but decline to adopt that court's view.

turpitude—the basis for his detention.  This protraction cannot be attributed to either party.  In addition, while the parties have been responsible for certain delays in the proceedings, there is no evidence either party has acted in bad faith or with dilatory motives.  For instance, the delays in prosecution cannot be attributed to bad faith or other ill motive on the Government's part, as those delays appear to be ordinary or customary in many immigration cases.  Any delays arising from Dorley's defense, including ordinary continuances, are not attributed to bad faith or ill motive on Dorley's part, as Dorley had representation and related concerns to resolve.  The undersigned concludes this factor is neutral.

### III.     Possibility of Removal

The Government states ERO regularly conducts removals to Liberia and Dorley's removal should pose no problem once any removal order becomes final.  Doc. 5 at 7.

Under this factor—whether it will be possible to remove Dorley upon the issuance of a final order of removal—Dorley offers nothing for the Court to weigh; instead, counsel stated the Court should give this factor minimal weight under Sopo I.  Given Respondents' representations, it appears Dorley will be removed to Liberia fairly quickly and without issue, if a final order of removal is issued.  This factor weighs in Respondent's favor.

### IV.     Length of Civil Detention Relative to Length of Criminal Incarceration

Dorley has been detained in ICE's custody since August 2, 2021, which is a period of 20 months' time.  Doc. 1 at 5; Doc. 5 at 2.  Dorley was in the State of Georgia's custody from March 23, 2021 through July 11, 2021, based on his arrest for violating the terms of his probation.  Doc. 5 at 2.  Dorley's counsel clarified this state custodial time during the hearing, and AUSA Patrick agreed with counsel's assertion.  Thus, Dorley was in state custody for a period of approximately three and one-half months' time.  Because Dorley's time in civil

detention is significantly more (almost sixfold) than the time he spent in state custody, this factor weighs in Dorley's favor.

V.     **Facility Conditions**

Dorley contends his detention at the Folkston ICE Facility is not meaningfully different from a penal institution or criminal detention. Doc. 11 at 2–3. Dorley states there are punitive, prison-like conditions at the ICE Facility, such as solitary confinement, head counts, holding cells, locked dorms, no contact visits, limited recreation, razor wire covered fences, and inadequate mental health services. Id. at 2. In addition, Dorley states he did not receive the level of treatment at the ICE Facility that he did while he was housed in state facilities. Id. at 3. Counsel submitted a Supplement to his opposition to the Motion to Dismiss, including a DHS report detailing violations of detention standards at the Folkston ICE Facility after DHS Office of Inspector General conducted an unannounced inspection of the facility. Doc. 19-5. This report supports Dorley's assertions about the conditions at the ICE Facility.

On this record, I find Dorley has shown his detention at the Folkston ICE Facility is not meaningfully different from a penal institution or criminal detention. The evidence of record supports Dorley's position. Respondents offer no evidence showing the conditions at this ICE Facility are less harsh or even meaningfully different than those at a prison.[5] Based on this record, I find this factor favors Dorley. I decline Dorley's counsel's invitation to take judicial notice of this evidence for this or any future § 2241 petition, however, as the Sopo I factors are to be weighed and determined on a case-by-case basis.

---

[5]     Respondent's counsel stated during the hearing the Folkston ICE Facility does not house individuals who are serving sentences on criminal convictions and the civil detainees who are housed at the ICE Facility have "certain" liberties not afforded to criminal detainees. While this may be accurate, it does not demonstrate Dorley's conditions are "meaningfully different" from conditions at prison.

11

VI.     **Likelihood of Detention Concluding in Near Future**

At the hearing, counsel for both parties noted the immigration judge conducted a hearing on removal on March 29, 2023, and the judge stated he would issue a written order within 5 to 10 days' time.  Dorley's counsel noted the immigration court will be faced with complicated legal issues, including whether Dorley's convictions for which he is being detained still qualify as crimes involving moral turpitude, presumably through the immigration appeals process. There is nothing before the Court indicating how long the appellate process will take, but it is reasonable to assume the process could take several months or over a year.  Thus, this factor weighs in Dorley's favor, as it is currently undetermined whether or when Dorley will be ordered removed.

On balance, the Sopo I factors indicate Dorley is entitled to an individualized bond determination hearing.  Four of these factors weigh in Dorley's favor, one factor weighs in Respondent's favor, and one is neutral.  Based on these circumstances, Dorley should have an individualized bond hearing.  Dorley has been in ICE's custody for 20 months' time, and his counsel stated his immigration proceedings will not conclude at any time soon.  Accordingly, Respondent's Motion is due to be denied.  Dorley's Petition is due to be granted, and he should have an individualized bond inquiry.  This is not to say Dorley is entitled to bond, only that he should have an individualized bond determination hearing.  In addition, I decline to make a recommendation as to which party should bear the burden of proof at this hearing.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **DENY** Respondent's Motion to Dismiss, **GRANT** Dorley's § 2241 Petition, and **DIRECT** Respondent or other ICE officials to conduct an individualized bond hearing as soon as practicable.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 3rd day of April, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA